# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JASON LEE PACE, | ) | |
| | ) | |
| Plaintiff , | ) | |
| | ) | |
| v. | ) | Case No. 5:14-cv-00218-RDP-JEO |
| | ) | |
| ROBERT BENTLEY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Jason Lee Pace, hereinafter referred to as the plaintiff, has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States have been abridged during his incarceration in the custody of the Alabama Department of Corrections.  Named as defendants in the complaint are Governor Robert Bentley; Commissioner Kim Thomas; Warden Carter (Decatur Work Release); Officer Bradley McCulla; and Corizon Medical Services.  The plaintiff seeks compensatory and punitive damages, as well as injunctive relief for alleged excessive force and denial of adequate medical care.

In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).  The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, § 804, 110 Stat. 1321, and 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against officers or employees of

governmental entities and to dismiss the complaint or any portion of the complaint that it finds frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. Thus, under § 1915A, the court may *sua sponte* dismiss a prisoner's complaint prior to service. Nevertheless, in order to protect a *pro se* prisoner's right of access to the courts, these complaints are read by less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984); *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976).

## PLAINTIFF'S FACTUAL ALLEGATIONS

The plaintiff is a prisoner in the custody of the Alabama Department of Corrections (DOC) and is presently housed at the Limestone Correctional Facility in Harvest, Alabama. His claims arise from events occurring at the Decatur Work Release facility, where he alleges he was subjected to excessive force by Officer Bradley McCulla. (Doc. 1). On October 26, 2013, he was standing in line to enter the dining hall when Officer McCulla approached him and asked him what he was doing in the line so early. *Id*. at 5. The plaintiff stepped out of line with his hands clasped behind his back and approached McCulla as he was ordered to do, and advised McCulla that he was assigned to maintenance and was allowed to eat earlier than regular population inmates. *Id*. at 5. When McCulla stated "Ain't no fucking maintenance being called today," the plaintiff asked him why he was cussing, at which point McCulla punched him in the chest. *Id*. at 5-6. Although the plaintiff then raised his hands

2

above his head, ostensibly to show restraint, McCulla "lunged at [him] and performed a leg sweep take down maneuver, throwing [him] hard to the ground." *Id*. at 6.[1]  The plaintiff was then choked and placed in an "arm bar" hold.

After the incident, he was taken to the Health Care Unit for a "body chart" then transferred to a segregation unit, where he remained for twelve days with a "grossly swelled knee." (Doc. 1, pp. 6-7).  Although he complained verbally and in writing of "excruciating pain," he was "refused any form of medical screening or treatment" during the time he remained in segregation.  On this point, he alleges he sought medical help from all correctional staff in which he came in contact, but fails to identify specific individuals or the details of these encounters.

At some point, the plaintiff was transferred to the Limestone Correctional Facility where he requested medical attention for his knee.  (Doc. 1, p. 7).  He was taken to a free world physician on January 10, 2014, where an MRI was conducted and he was diagnosed with an M.C.L. tear and a severed A.C.L. in his right knee.  *Id*. at 7.  As of the date he signed the complaint, February 2, 2014, he had not been provided surgery to repair his knee.  *Id*. at 8.  He complains that the Alabama Department of Corrections and Corizon Medical Services "have thus far refused to afford said surgery." *Id*. at 8. He contends that "gross overcrowding" within the DOC has resulted in delayed wait times to obtain "corrective

---

[1] At some point, the plaintiff's head struck the floor. (Doc. 1, p. 6).

medical attention" and that Governor Bentley and Commissioner Thomas have shown deliberate indifference by failing to correct the overcrowded conditions.

## DISCUSSION

**Excessive force claim:**

The Eighth Amendment's prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). However, maintaining institutional security and preserving internal order and discipline are essential goals of a prison administration and may require limitation or retraction of the constitutional rights of prisoners. *Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 47 (1979). Prison officials must therefore be free to take appropriate action to insure the safety of inmates and staff and the courts will not normally second-guess prison officials on matters involving internal security. *Wilson v. Blankenship*, 163 F.3d 1284 (11th Cir. 1998). When disciplinary action is taken by a prison official to prevent a security threat or to restore official control, the court's Eighth Amendment inquiry focuses on whether force was applied in a good faith effort to maintain or restore discipline or was undertaken maliciously or sadistically to cause harm. *Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994). The factors to be examined in determining whether the use of force was wanton and unnecessary include an evaluation of: 1) the need for the application of the force, 2) the relationship between that need and the amount of force used,

3) the threat reasonably perceived by the responsible officials and 4) any efforts made to temper the severity of the response. *Hudson v. McMillian*, 503 U.S.1, 7 (1992).

In the present case, although the facts pled by the plaintiff are limited, they are sufficient to require a further response from defendant McCulla. With respect to convicted prisoners, the actions alleged to have been taken by defendant McCulla can be construed as a violation of the Constitution if they are unnecessary and wanton or are done maliciously or sadistically to cause harm. *Whitley v. Albers*, 475 U.S. 312 (1986). Although it is conceivable that McCulla's actions were appropriate with respect to the overall circumstances that may have been associated with the incident, the facts before the court are that the plaintiff was punched and thrown to the floor for no valid reason. According to the facts alleged in the complaint, there is no indication the plaintiff could have been perceived as a threat by Officer McCulla and there does not appear to have been a need for the use of force at the time, much less to the extent administered. Therefore, without response from the defendant, the court is not prepared to say as a matter of law that his actions fell short of violating the plaintiff's constitutional rights, even when viewed in the context of a prison setting where the need for security, order and discipline are paramount. As stated above, when force is used in a good faith effort to maintain or restore discipline, the Constitution is not necessarily violated. However, in this case, the plaintiff has pled facts suggesting that the use of force was neither necessary nor in good faith. Accordingly, the magistrate judge

recommends that the plaintiff's excessive force claim against Officer McCulla be allowed to proceed.

**<u>Medical claim:</u>**

Medical treatment of prisoners violates the Eighth Amendment only when it is so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Harris v. Thigpen*, 941 F.2d 1495 (11th Cir. 1991). The conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983. *Estelle v. Gamble*, 429 U.S. 97 (1976). In order to state a constitutional claim based upon denial of medical care, not only must the plaintiff submit facts which demonstrate an objectively serious need, but he must also demonstrate that the named defendants have been subjectively indifferent to that need.

In this instance, the plaintiff has failed to assert facts sufficient to state a constitutional claim with regard to his knee injury. At the time he filed the complaint in this action, he had been seen by an outside physician approximately thirty days earlier. Although he states he was diagnosed at that time with a torn M.C.L. and a severed A.C.L., he provides no facts to identify the specific care prescribed by the physician for those injuries. Even if corrective surgery had been recommended, the court is not prepared to say that a thirty day delay in scheduling that surgery shocks the conscience or is intolerable to fundamental fairness.

More importantly, even if such delay were tantamount to deliberate indifference, the plaintiff has failed to show that any of the named defendants was aware of his injury, or how any one of them is directly responsible for the alleged delay.  In other words, he has failed to specifically allege how any one of the defendants acted intentionally or recklessly to deny or delay medical care or that any of the defendants acted with "an attitude of deliberate indifference" towards his medical problem.  *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).[2]  The plaintiff can assert a valid constitutional claim only if he can show that any one defendant possessed a "subjective awareness" of facts signaling a serious medical need *and* that the defendant was deliberately indifferent, as opposed to merely negligent, in failing to address that need.  Having failed to show that any defendant has acted "intentionally or recklessly" to deny medical care, the plaintiff has failed to alleged facts which show the required "punitive intent" on the part of any of the defendants.  *Id*.[3]

The plaintiff's assertions that Governor Bentley and Commissioner Thomas are aware of alleged overcrowding within DOC facilities fails to state a claim on two fronts.  To begin with, overcrowding in prisons is not *per se* unconstitutional.  *Collins v. Ainsworth*, 382 F.3d

---

[2] "While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong."  *Douglas v, Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008) *quoting  Pamel Corp. v. P.R. Highway Auth.*, 621 F.2d 33, 36 (1st Cir. 1980)

[3] The plaintiff alleges that Warden Carter is liable under both the excessive force claim and medical claim because he is the "overall supervisor" of the Decatur Work Release facility.  (Doc. 1, pp. 7-8).  However, "[t]here is no *respondeat superior* liability under § 1983."  *Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995); *citing Monell v. Department of Social Services*, 436 U.S. 658, 690-92 (1978) and *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993.  Absent a showing that Warden Carter is somehow directly linked to a constitutional violation, no claim is stated.

529, 540 (5th Cir. 2004). It is only when the overcrowded conditions lead to deprivations of essential food, medical care or sanitation, or lead to increased violence among inmates, or create other conditions intolerable for prison confinement that they violate the Eighth Amendment proscription against cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981). Without asserting specific facts to support his contention, the plaintiff has simply asserted in conclusory fashion that the alleged overcrowding in Alabama Department of Corrections facilities is responsible for his failure to receive timely and adequate medical care. In that regard, the plaintiff's complaint must be viewed in light of the defendants' qualified immunity and the plausibility requirements set forth by the Supreme Court in *Twombly* and *Iqbal*. Although courts are required to construe *pro se* complaints liberally, the complaint must nevertheless allege facts from which the inference of a constitutional violation is "plausible," not merely speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "[T]he complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009), (quoting *Twombly*, 550 U.S. at 570). To speculate about the possibility of claim not only fails to comport with Rule 8(a) pleading standards, but also would prematurely vitiate the defendants' qualified immunity, an immunity that protects the defendants from the burden of even responding to the plaintiff's complaint.

Additionally, the plaintiff has failed to present facts which would support the subjective element of an Eighth Amendment claim against Governor Bentley or

Commissioner Thomas. There is no allegation that either defendant is aware of the plaintiff's injury, or that they have acted with the required "punitive intent" sufficient to violate the Eighth Amendment. *Taylor*, *supra*. The plaintiff's assertions that Bentley and Thomas have shown "malfeasance and misfeasance" in the face of the alleged overcrowding problem falls short of stating a constitutional claim. It is well settled that "deliberate indifference entails something more than mere negligence." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Furthermore, even if the plaintiff had shown that Bentley and Thomas were aware of his medical condition, the court is unpersuaded that this alone would raise a duty on their part to intervene in a specific medical issue. The Department of Corrections contracts with a medical provider to supply medical services to prisoners, and medical decisions should be left that provider in the absence of evidence that the provider is wholly failing to carry out its duties.

Finally, the plaintiff has failed to assert sufficient facts to state a claim against Corizon Medical Services. Even if the court found that he had suffered from unconstitutional delay, that alone would not entitle him to recover against the corporate medical provider. While a corporation providing prison medical services may be liable under § 1983 if it is established that the constitutional violation was the result of the corporation's policy or custom, *see Buckner v. Toro,* 116 F.3d 450 (11th Cir. 1997); *Ort v. Pinchback*, 786 F.2d 1105, 1107 (11th Cir. 1986), such a corporation may not be held liable under § 1983 on the basis of *respondeat superior*, *see Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992)*; Monell v.*

*Department of Social Services*, 436 U.S. 658 (1978).  Although he has named Corizon Medical Services as a defendant, the plaintiff has not alleged how any policy or custom of Corizon contributed in any way to the claimed constitutional violation.

## **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

Accordingly, for the reasons stated above, the magistrate judge RECOMMENDS that all claims in this action, except the excessive force claim against Officer McCulla, be **DISMISSED WITHOUT PREJUDICE** for failing to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915A(b)(1). The magistrate judge further **RECOMMENDS** that the excessive force claim against Officer McCulla be referred to the undersigned magistrate judge for further proceedings.

Plaintiff may file specific written objections to this report and recommendation within **fourteen (14) days** from the date it is filed in the office of the Clerk.  Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included.  Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within **fourteen (14) days** from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal.  Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  Objections not meeting this specificity requirement will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is **DIRECTED** to serve a copy of this report and recommendation upon the plaintiff.

**DATED**, this 13th day of August, 2014.

**JOHN E. OTT**
Chief United States Magistrate Judge